*512 S.E.2d 590*

**William E. JONES, Plaintiff
below, Appellant,**

v.

**Steven L. SANGER and State Farm Mutual Automobile Insurance Company,
Defendants below, Appellees.**

No. 24437.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 22, 1998.

Decided Dec. 15, 1998.

Ralph C. Young, Esq., Hamilton, Burgess, Young, Tissue & Pollard, Oak Hill, West Virginia, Attorney for appellant.

Gary E. Pullin, Esq., Theresa M. Kirk, Esq., Pullin, Knopf, Fowler & Flanagan, Charleston, West Virginia, Attorneys for appellees.

PER CURIAM:

This is an appeal from a December 17, 1996, order of the Circuit Court of Fayette County that denied appellant William Jones' ("Jones") motion for a new trial following a jury trial that resulted in a verdict for the appellee, Steven Sanger ("Sanger"). Appellee State Farm Mutual Automobile Insurance Company ("State Farm") is the underinsured motorist insurance carrier for Woodrow W.

Jones, father of William Jones and driver of the automobile in which Jones was a passenger. State Farm was dismissed as a defendant by the circuit court.

Jones contends that the circuit erred in dismissing State Farm as a party defendant; erred in refusing to allow Jones to put on evidence relating to his claim for negligent infliction of emotional distress; and erred in refusing to allow the admission of certain evidence related to the negligence of appellee Sanger and evidence tending to contradict one of Sanger's witnesses.

For the reasons set forth below, we reverse the circuit court's order and remand this case for a new trial.

## I.

On January 21, 1992, Jones was a backseat passenger in a vehicle being driven by his father, Woodrow W. Jones. Jones' mother, Edith Jones, was a passenger in the front seat. Sanger was traveling in the opposite direction of the Jones vehicle. Sanger lost control of his vehicle, crossed the center line and struck the Jones vehicle head-on.

As a result of the accident, Edith Jones died while still trapped in the vehicle. Both Jones and his father were also trapped in the vehicle and both were injured. Jones was thrown across his mother and laid in her lap as he watched her die. William Jones has suffered from cerebral palsy all his life and at the time of the accident was 39 years old and living with his parents, who cared for him. Following the accident, Jones has been confined to his home and has been required to hire attendant care.

Jones and his father as individuals, and the father acting as the administrator of his wife's estate, settled with Sanger for the limits of Sanger's automobile liability policy. This settlement was made with the consent of the Jones family's underinsured motorist insurance carrier, appellee State Farm. State Farm also waived any right to subrogation from Sanger. Additionally, State Farm agreed to settle the claim of Jones' father for underinsured motorist benefits.

However, the parties were not able to reach a settlement in regard to the underinsured claim of appellant Jones. Jones filed the instant action, naming State Farm and Sanger as defendants. Subsequently, upon a motion to dismiss, the circuit court dismissed State Farm as a party defendant leaving Sanger as the only defendant.

In addition to other damages, Jones sought damages from Sanger for the negligent infliction of emotional distress caused by witnessing his mother's death. Prior to trial the circuit court granted Sanger's motion *in limine* to prohibit the introduction of evidence concerning the death of Edith Jones.

During the course of the trial, Jones sought to develop evidence concerning the condition of Sanger's automobile tires. Jones attempted to present state trooper testimony and photographic evidence indicating that Sanger's tires were bald. Jones also sought to introduce photographs of highway signs warning of sharp curves on the road at the scene of the accident. These signs also stated the recommended safe speed for the curves. Appellee Sanger objected to the photographs, and the trial court refused to allow the photographs to be admitted into evidence.

Also during the trial, appellee Sanger called Gary Lee Treadway as a witness. Treadway had been a passenger in the front seat of Sanger's vehicle at the time of the accident. During cross-examination, counsel for Jones attempted to question Treadway about a settlement he negotiated after filing a claim against Sanger. The circuit court limited Jones' examination, denying Jones the opportunity to develop the settlement issue with the jury.

The jury returned a verdict for appellee Sanger. Jones filed a motion for a new trial, and the motion was denied. Jones now appeals the circuit court's order denying a new trial, and appeals the circuit court's dismissal of State Farm as well as the aforementioned evidentiary issues.

## II.

### A.

### *State Farm as Party Defendant*

The first issue we address is whether the circuit court erred in dismissing State Farm as a party defendant.

█ We have stated:

A plaintiff is not precluded under W.Va. Code, 33–6–31(d) (1988), from suing an uninsured/underinsured insurance carrier if the plaintiff has settled with the tortfeasor's liability carrier for the full amount of the policy and obtained from the uninsured/underinsured carrier a waiver of its right of subrogation against the tortfeasor.

Syllabus Point 4, *Postlethwait v. Boston Old Colony Insurance Company*, 189 W.Va. 532, 432 S.E.2d 802 (1993).[1]

▆▆▆ Shortly after our decision in *Postlethwait*, we examined the issue of direct action by a policyholder against an underinsured motorist insurance carrier and we stated:

When a direct action against an uninsured or underinsured motorist carrier is pursued, that action sounds in contract and is governed by the statute of limitations applicable to contract actions. Where a plaintiff pursues an action to recover uninsured or underinsured motorist benefits, that action may be directed against the uninsured or underinsured carrier and does not require an action against the tortfeasor with whom the plaintiff has already settled for liability limits with the insurer's consent and waiver of subrogation rights.

Syllabus Point 2, *Plumley v. May*, 189 W.Va. 734, 434 S.E.2d 406 (1993).

▆▆▆ In this case, Jones settled with Sanger for Sanger's policy limits, and released Sanger. The settlement was made with the consent of State Farm, and State Farm waived its right of subrogation against Sanger. The plaintiff now seeks to recover underinsured motorist benefits from State Farm, his father's underinsured motorist insurance carrier, because the insurance company provided coverage for the vehicle in which he was a passenger. The requirements of *Postlethwait* and *Plumley* being satisfied, the plaintiff may bring an action directly against the underinsured motorist insurance carrier, State Farm. The circuit court was therefore in error to dismiss State Farm as a party defendant.

## B.

### Jones' Claim for Negligent Infliction of Emotional Distress

Jones next argues that the circuit court erred in prohibiting Jones from introducing any evidence concerning the death of Jones' mother. In his complaint, Jones included negligent infliction of emotional distress as a cause of action.[2]

▆▆▆ We have stated the elements a plaintiff must prove to recover for the personal injury of negligent infliction of emotional distress:

A plaintiff's right to recover for the negligent infliction of emotional distress, after witnessing a person closely related to the plaintiff suffer critical injury or death as a result of defendant's negligent conduct, is premised upon the traditional negligence test of foreseeability. A plaintiff is required to prove under this test that his or her serious emotional distress was reasonably foreseeable, that the defendant's negligent conduct caused the victim to suffer critical injury or death, and that the plaintiff suffered serious emotional distress as a direct result of witnessing the victim's critical injury or death. In determining whether the serious emotional injury suffered by a plaintiff in a negligent infliction of emotional distress action was reasonably foreseeable to the defendant, the following factors must be evaluated: (1) whether the plaintiff was closely related to the injury victim; (2) whether the plaintiff was located at the scene of the accident and is aware that it is causing injury to the victim; (3) whether the victim is critically injured or killed; and (4) whether the plaintiff suffers *serious* emotional distress.

Syllabus Point 2, *Heldreth v. Marrs*, 188 W.Va. 481, 425 S.E.2d 157 (1992).

1. *W.Va.Code*, 33–6–31 was amended in 1995; however, the amendments do not change our analysis in *Postlethwait*.

2. Jones' complaint states, in pertinent part:

As a direct and proximate *result of the negligence* of the defendant as aforesaid, the plaintiff, William E. Jones, endured pain, suffering, mental anguish and *emotional distress*. (Emphasis added.)

■ State Farm contends that Jones should not have been permitted to present evidence on his claim of negligent infliction of emotional distress because any damages resulting from this claim were included in the settlement of the claim made by the estate of Jones' mother. State Farm argues that under the settlement reached between Sanger and the estate of Edith Jones, appellant Jones received emotional distress damages through the Wrongful Death Act, *W.Va.Code,* 55–7–6(c)(1) [1992], including damages for "[s]orrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice[.]" *W.Va. Code,* 55–7–6(c)(1) [1992].

■ We have held that damages recoverable in a wrongful death action for "sorrow, mental anguish and solace" are separate from damages recoverable by an individual in a claim for the negligent infliction of emotional distress. We have stated:

> An action for death by wrongful act brought pursuant to W.Va.Code § 55–7–5 (1931) and W.Va.Code § 55–7–6(c)(1)(A) provides damages for "mental anguish," is not duplicative of an action for negligent infliction of emotional distress because each action provides for recovery of damages for a different injury. Therefore, both an action for death by wrongful act and an action for negligent infliction of emotional distress may arise from the same event.

Syllabus Point 4, *Stump v. Ashland, Inc.,* 201 W.Va. 541, 499 S.E.2d 41 (1997).[3]

■ Syllabus Point 2 of *Heldreth, supra,* requires a plaintiff, in order to recover for the negligent infliction of emotional distress, to prove three things: that the defendant's negligent conduct caused a victim (a person closely related to the plaintiff) to suffer a critical injury or death; that the plaintiff suffered serious emotional distress as a direct result of witnessing a victim's critical injury or death; and the emotional distress was reasonably foreseeable.

Reasonable foreseeability is evaluated under *Heldreth* by looking at four factors: (1) whether the plaintiff was closely related to the injury victim; (2) whether the plaintiff

was located at the scene of the accident and was aware that it was causing injury to the victim; (3) whether the victim was critically injured or killed; and (4) whether the plaintiff suffered serious emotional distress.

■ In accordance with *Heldreth, supra,* we hold that evidence relating to the death of Jones' mother was admissible in support of Jones' claim for negligent infliction of emotional distress. Jones should have been permitted to introduce evidence that appellee Sanger's negligent conduct caused his mother's death, and that as a direct result of witnessing his mother's death, Jones suffered serious emotional distress. The test set out in *Heldreth, supra,* was satisfied. Jones was related to his mother; Jones was present and conscious at the scene; Jones was laying in his mother's lap while she died and while both were trapped in the car; Jones was aware of his mother's dying; the victim, Jones' mother, was killed as a result of appellee Sanger's allegedly negligent conduct; and as a result of his mother's death, Jones allegedly suffered serious emotional distress.

Because the circuit court did not allow the introduction of evidence of the events surrounding the death of Jones' mother, Jones was essentially precluded from pursuing his claim for negligent infliction of emotional distress. Accordingly, we conclude that the circuit court erred in not permitting Jones to present evidence surrounding the events relating to his mother's death.

### C.

### *Exclusion of Certain Evidence*

Jones appeals three separate rulings by the circuit court excluding the admission of certain relevant evidence. The appellant contends that the circuit court abused its discretion in excluding this evidence.

First, Jones contends that the circuit court erred in not permitting the introduction of photographs of highway signs warning drivers of "S" curves on the road, and photographs of signs posting an advisory speed of 30 miles per hour.

Next, Jones argues that the circuit court abused its discretion in prohibiting the intro-

---

**3.** We recognize that the *Stump* case was decided after the trial was held in the matter; however, the principles that the *Stump* case relies upon were in effect at the time the trial occurred.

duction of photographs of Sanger's automobile tires following the car wreck. Jones claimed that the photographs, taken by the state trooper who investigated the accident, suggested that the tires were bald.

Finally, appellant Jones appeals the circuit court's limitations imposed on the appellant's cross-examination of Gary Lee Treadway. The trial court refused to permit Jones' attorney to cross-examine Mr. Treadway, a front seat passenger in the Sanger automobile at the time of the accident, concerning Treadway's settlement of a claim against Sanger.

■ Circuit courts are granted significant discretion in making evidentiary rulings. Syllabus Point 1, *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995). However, while "most rulings of a trial court regarding the admission of evidence are reviewed under an abuse of discretion standard, ... an appellate court reviews *de novo* the legal analysis underlying a trial court's decision." *State v. Guthrie,* 194 W.Va. 657, 680, 461 S.E.2d 163, 186 (1996) (citations omitted). *In accord,* Syllabus Point 1, *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995).

*W.Va.R.Evid.* 402 [1994] provides:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of West Virginia, by these rules, or by other rules adopted by the Supreme Court of Appeals. Evidence which is not relevant is not admissible.

Relevant evidence is that evidence that tends to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *W.Va. R.Evid.* 401 [1985].

■ Whether Sanger was negligent in the operation of his vehicle, and whether this negligence was the direct and proximate cause of the automobile accident were in

issue in this case. The testimony about, and photographs of, highway signs warning of sharp curves ahead and the recommended lower speed, could assist the jury in determining whether it was more or less probable that Sanger was operating his vehicle in a prudent manner for the road conditions. It was therefore error for the circuit court to exclude this evidence.

■ Similarly, the condition of Sanger's tires could assist the jury in determining whether it was more or less probable that Sanger was negligent in the operation of his vehicle. Photographs of Sanger's automobile, proffered to support the allegation that the tires were bald, were relevant to the issue of negligence.[4] We therefore find that the circuit court abused its discretion in refusing to allow the admission of the photographs of Sanger's tires.

■ Finally, Jones contends that the circuit court erred in its limitation of his cross-examination of Mr. Treadway, a passenger in Sanger's vehicle. During direct examination, Treadway testified that he believed Sanger, Treadway's nephew, was driving in a reasonable and prudent manner at the time of the accident.

On cross-examination, counsel for Jones attempted to question Treadway about a claim for injuries that he made against Sanger following the accident. The testimony sought on cross-examination was intended to impeach Treadway's assertion that Sanger had been driving in a reasonable and prudent manner. However, the *circuit court* severely restricted the appellant's questioning of Treadway on the settlement with Sanger.

■ There is no rule of evidence governing the admissibility of "contradictions."[5] When no specific rule exists, "admissibility must be determined by reference to the general provisions governing the admission of relevant evidence." *State v. Derr,* 192 W.Va. 165, 178, 451 S.E.2d 731, 744 (1994).

It appears from the record that Mr. Treadway was an important factual witness. As the

4. The appellees argue that the photographs of the tires were properly excluded because Sanger's car caught fire after the accident, and the fire could have melted and damaged the tires. However, the fact of the fire could have been presented to the jury, who could then determine how much probative weight to give the photographs.

5. See *McDougal v. McCammon,* 193 W.Va. 229, 236, 455 S.E.2d 788, 795 (1995).

only passenger in Sanger's car at the time of the accident, Mr. Treadway's perceptions of the accident were certainly relevant to the negligence issues before the jury. That Treadway made a claim against Sanger for damages could demonstrate a contradiction in Treadway's trial testimony that Sanger was driving in a prudent manner at the time of the accident. Accordingly, Jones should have been permitted to proceed with his cross-examination on this issue.

Therefore, we find that the circuit court abused its discretion by limiting the cross-examination of Mr. Treadway about Treadway's claim for damages against Sanger.[6]

### III.

For the foregoing reasons, we reverse and remand this matter for a new trial.

Reversed and Remanded.

Justice McGRAW did not participate in the decision of this case.

6. Appellant Jones also raises two additional issues. First, Jones contends that the circuit court abused its discretion when it refused to allow counsel for Jones to conduct a meaningful *voir dire* of prospective jurors concerning lawsuits and insurance rates and whether members of the families of the prospective jurors were employed by the insurance industry. The second issue raised by Jones is that the circuit court improperly gave the jury an "unavoidable accident instruction."

Because we reverse the circuit court's decision on other grounds, we decline to address these issues.